UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
JAMES ROBINSON

                           Petitioner,                  **REPORT & RECOMMENDATION**
                                                                 **09-CV-1904 (KAM)(LB)**

-against-

ROBERT CUNNINGHAM,
Acting Superintendent,
Green Haven Correctional Facility,

                           Respondent.
----------------------------------------------------------X
BLOOM, United States Magistrate Judge:

James Robinson ("Robinson" or "petitioner") petitions this Court *pro se* seeking a writ of habeas corpus pursuant to 28 U.S.C. § 2254. The Honorable Kiyo A. Matsumoto, United States District Court Judge, referred this petition to me for a Report and Recommendation in accordance with 28 U.S.C. § 636(b). For the reasons set forth below, it is respectfully recommended that the petition should be denied.

## BACKGROUND

According to the testimony adduced at trial, on April 14, 2002 at approximately 12:45 a.m., petitioner grabbed Deborah Austin ("Austin") from behind and dragged her to an abandoned lot, where he assaulted and raped her. (Tr. 208:8-25; 210:5-8, 14-24).[1] At the same time, Rakem Kato ("Kato") and Courtney Allen ("Allen") were walking past the lot. They heard a woman "screaming and crying telling somebody no" and called 911. (Tr. 26:10-22, 41-42; Tr. 27:2-24). When Officers Gregory Kondenar and Michael Michelini of the New York City Police Department arrived, Kato and Allen pointed them in the direction of the screams. (Tr. 55:17-25;

---

[1] ("Tr.") refers to the transcript of petitioner's trial in New York State Supreme Court, Kings County, Criminal Term, Part 3 which commenced on June 30, 2004 and ended on July 9, 2004.

1

82:11-19). The officers searched the lot and found petitioner on top of Austin, with his pants down. (Tr. 83:15-84:9; 57:6-18). Austin screamed for help and the officers placed petitioner under arrest. (Tr. 57:5-18; 83:15-21).

That same day, petitioner was arraigned and charged with Rape in the First Degree, Sexual Abuse in the First Degree, Sexual Misconduct, and Assault in the Third Degree. Resp't's Ex. D at 30-31. On May 3, 2002, the Assistant District Attorney filed the indictment. Id. at 31. Numerous delays ensued. Id. at 31-34. As a result, petitioner's trial counsel moved to dismiss the indictment pursuant to New York Criminal Procedure Law ("N.Y.C.P.L") § 30.30. Id. at 23. This statute requires dismissal of a felony indictment unless the prosecution states their readiness for trial within six months of filing the indictment. See N.Y. Crim. Proc. Law § 30.30.

New York State Supreme Court Judge James Sullivan denied petitioner's motion to dismiss and found 179 days were chargeable to the prosecution, four days short of the statutory limit. Id. at 40-43. In so holding, Judge Sullivan declined to count a 14-day adjournment, which the Assistant District Attorney requested without reason and to which petitioner's counsel did not object. Id. at 15. The government, in opposing petitioner's motion to dismiss, alleged that the 14-day adjournment was necessary to obtain the results of DNA testing. Id. at 34, 38. Judge Sullivan concluded that "given that the record on this issue is unclear, ... [the] time is properly excluded." Id. at 42. He also noted that "if the court were to credit the People's explanation," an adjournment to obtain DNA testing results is an exceptional circumstance that was not chargeable to the prosecution. Id.

On June 30, 2004, petitioner's jury trial began and the prosecution offered 11 witnesses on its direct case, including the complainant, Deborah Austin, the treating physician, and an emergency medical technician. On summation, petitioner's counsel argued that the intercourse

was consensual: that Ms. Austin, who admitted to being a convicted prostitute and drug offender, was a liar who had conceded that petitioner had offered to pay for the intercourse. (Tr. 375:12-18; 382:8-10). In response, A.D.A. Gregory told the jury that Ms. Austin "told the truth when she testified in this courtroom," that she "came in here and testified and she did so truthfully" and that she is a "credible witness" who "was able to tell you what happened to her in detail." (Tr. 389:17-19; 392:9-19). A.D.A Gregory also stated that the witnesses the jurors heard from "believed that this case was a rape case ... not a prostitution case" and warned the jurors "not to be tricked" by defense counsel. (Tr. 403:14-22). On July 9, 2004, the jury convicted petitioner of Rape in the First Degree, Assault in the Second Degree, Assault in the Third Degree and Bail Jumping in the Third Degree. (Tr. 445:7-446:3). On January 31, 2005, petitioner was sentenced as a mandatory persistent violent felony offender to 25 years to life, to run concurrently with a sentence of one year for his misdemeanor convictions. (Sentencing Tr. 20:3-11).

## PROCEDURAL HISTORY

On May 2, 2007, petitioner appealed from the judgment of conviction to the New York State Supreme Court, Appellate Division, Second Department on the following grounds: 1) the trial court erred in denying petitioner's speedy trial motion, specifically in excluding the 14-day adjournment requested without any stated reason; 2) ineffective assistance of counsel based on counsel's failure to file a reply objecting to the belated justification for the 14-day adjournment, and; 3) the prosecutor's statements during summation severely prejudiced petitioner and deprived him of a fair trial because the prosecutor vouched for the complaining witness's

credibility, referred to beliefs held by other witnesses, and warned the jurors not to be tricked by defense counsel.[2] Resp't's Ex. B at 4, 22.

The Appellate Division, Second Department, affirmed the judgment of conviction on January 22, 2008. See People v. Robinson, 47 A.D.3d 847, 850 N.Y.S.2d 533 (2d Dep't 2008). The Court held that: 1) petitioner's claim that the trial court erred in considering the prosecutor's reason for the 14-day adjournment was unpreserved for appellate review; (2) in any event, the claim was without merit, as delays for results in DNA analysis are excludable under N.Y.C.P.L. § 30.30(4)(g)(i) and the court could credit any justification for a delay that the record corroborates even if the prosecutor did not provide this reason in requesting the adjournment; 3) petitioner's claim of prosecutorial misconduct is unpreserved for appellate review, but that in any event "the challenged remarks did not deprive defendant of a fair trial;" and, 4) petitioner had "meaningful representation." Id. at 848. The New York State Court of Appeals denied petitioner's request for leave to appeal on May 12, 2008. People v. Robinson, 10 N.Y.3d 869 (2008). On April 30, 2009, petitioner filed the instant *pro se* petition seeking a writ of habeas corpus under 28 U.S.C. § 2254, raising the same claims asserted on direct appeal, with one exception.[3]

## DISCUSSION

I. Standard of Review

Under the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214, once a state court has adjudicated a petitioner's claim on the merits,

---

[2] On direct appeal, petitioner apparently abandoned his original calculation of 290 chargeable days and only disputed the trial court's exclusion of the 14-day period between September 10 and September 24, 2003. Resp't's Ex. B at 4.

[3] Petitioner asserts that his trial counsel was "ineffective" in failing to "conduct a thorough investigation of the facts and circumstances surrounding the guilt, and/or innocence of the defendant." Br. in Supp. of Pet. for Writ of Habeas Corpus at 10-11. However, although petitioner raised ineffective assistance based on counsel's failure to file reply papers regarding his speedy trial motion, this ground was not raised in state court and it is procedurally barred. See Anderson v. Harless, 459 U.S. 4, 6 (1982) (citing Picard v. Connor, 404 U.S. 270, 275-276 (1971)).

a federal court may not grant a habeas petition on that claim unless that adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States." 28 U.S.C. § 2254(d)(1). "Federal law" in this statute refers only to "clearly established Supreme Court precedent." Mask v. McGinnis, 252 F.3d 85, 90 (2d Cir. 2001).

Clearly established Federal law is comprised of "the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state court decision." Green v. Travis, 414 F.3d 288, 296 (2d Cir. 2005) (quoting Williams v. Taylor, 529 U.S. 362, 412 (2000)). A decision is "contrary to" clearly established federal law, as determined by the Supreme Court, "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams, 529 U.S. at 413; see also Earley v. Murray, 451 F.3d 71, 74 (2d Cir. 2006). A decision is an "unreasonable application" of clearly established federal law if a state court "identifies the correct governing legal principle from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of [a] prisoner's case." Williams, 529 U.S. at 413; Earley, 451 F.3d at 74.

AEDPA establishes a deferential standard of review: the relevant inquiry under AEDPA "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable – a substantially higher threshold." Schriro v. Landrigan, 550 U.S. 465, 473 (2007); Gilchrist v. O'Keefe, 260 F.3d 87, 93 (2d Cir. 2001). The Second Circuit has noted that although "[s]ome increment of incorrectness beyond error is required ... the increment need not be great; otherwise, habeas relief would be limited to state court decisions

5

so far off the mark as to suggest judicial incompetence." Gilchrist, 260 F.3d at 93 (quoting Francis S. v. Stone, 221 F.3d 100, 111 (2d Cir. 2000)); accord Earley, 451 F.3d at 74.

When reviewing a habeas petition, a federal court is limited to deciding whether a conviction violated the Constitution, law, or treaties of the United States. 28 U.S.C. § 2241(c)(3); see also Rose v. Hodges, 423 U.S. 19, 21 (1975) (per curiam). Federal habeas corpus relief does not lie for errors of state law. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); DiGuglielmo v. Smith, 366 F.3d 130, 136-37 (2d Cir. 2004).

Finally, as long as the state court disposes of the federal claim on the merits and reduces its disposition to judgment, the deference demanded of a federal habeas court by § 2254(d)(1) applies even if the state court does not explicitly refer to either the federal claim or to relevant federal case law. Jimenez v. Walker, 458 F.3d 130, 146 (2d Cir. 2006); Sellan v. Kuhlman, 261 F.3d 303, 312 (2d Cir. 2001). Applying this standard to this case, petitioner's application for a writ of habeas corpus should be denied.

II. Petitioner's Claims

A. Speedy Trial

Petitioner argues that the trial court denied him his "statutory right to a speedy trial" when it declined to charge the prosecution the 14-day adjournment that was requested without reason. Pet. ¶ 12. See also Br. in Supp. Of Pet. at 1-11. The state court held that this claim was procedurally barred as petitioner did not raise it before the trial court. The court also ruled, in the alternative, that had petitioner properly preserved the claim, it would still be denied as without merit. The court stated that:

> [w]here, as here, the reason for an adjournment as stated in the People's response to a speedy trial motion is corroborated by the record, it may be considered even though it was not articulated by the prosecutor when the adjournment was requested .... Moreover, the court correctly determined that a period of time

6

> necessary to obtain the results of DNA testing in a rape case is excludable under the speedy trial statute as a "delay occasioned by exceptional circumstances" pursuant to C.P.L. 30.30 (4) (g)

Robinson, 47 A.D.3d at 848.

Plaintiff's speedy trial claim is not a basis for this Court to grant habeas corpus relief. First, a federal court on habeas review "may not issue the writ on the basis of a perceived error of state law." Pulley v. Harris, 465 U.S. 37, 41 (1984). See Davis v. Kelly, 316 F.3d 125, 126 (2d Cir. 2003) (writ may not be granted unless state court's ruling was contrary to, or involved an unreasonable application of, clearly established Federal Law). Petitioner's claim based on N.Y.C.P.L. § 30.30 raises only the question of whether the state court properly applied state law. Smith v. LaClair, No. 04-CV-4356, 2008 WL 728653, at * 3 (S.D.N.Y. Mar. 17, 2008) (Scheindlin, J.); Wilson v. Goord, No. 00-CV-4849, 2004 WL 226149, at * 4-5 (S.D.N.Y. Feb. 6, 2004) (Swain, J.); Gibriano v. Attorney General, 965 F. Supp. 489, 492 (S.D.N.Y. 1997). As such, any claim based solely on N.Y.C.P.L. § 30.30 should be denied.[4]

Second, to the extent petitioner's claim asserts a violation of his Sixth Amendment right to a speedy trial, the claim should be denied as procedurally barred.[5] A habeas petitioner presents a federal claim in state court by (a) relying on pertinent federal cases employing constitutional analysis, (b) relying on state cases employing constitutional analysis in like fact situations, (c) asserting the claim in terms so particular as to call to mind a specific right protected by the Constitution, and (d) alleging a pattern of facts that is well within the mainstream of constitutional litigation. Strogov v. Attorney General, 191 F.3d 188, 191 (2d Cir. 1999). Petitioner did not cite any federal cases or state cases employing constitutional analysis

---

[4] Moreover, the state court ruled that this statutory claim was procedurally barred under N.Y.C.P.L. § 470.05(2), which is an independent and adequate state procedural rule. See Garcia v. Lewis, 188 F.3d 71, 79 (2d Cir. 1999); Hylton v. Ercole, No. 05-CV-4077, 2010 WL 2594744, at *8 (E.D.N.Y. June 23, 2010) (Garaufis, J.).
[5] Petitioner's brief cites N.Y.C.P.L. § 30.20 as the statutory provision embodying a federal constitutional right to a speedy trial. Br. In Supp. Of. Pet. at 8.

in his appellate brief. Ex. B at 18-22.[6] Instead, he relied solely on state cases discussing the statutory requirements and burdens under N.Y.C.P.L. § 30.30 and only presented facts regarding chargeable time against the prosecution under N.Y.C.P.L. § 30.30. Id. Because petitioner failed to properly raise a constitutional claim for state court review, the claim is procedurally barred from habeas review. Reyes v. Keane, 118 F.3d 136, 139 (2d Cir. 1997); Smith v. Maher, 468 F. Supp. 2d 466, 470-471 (W.D.N.Y. 2006) (because petitioner raised only a N.Y.C.P.L. § 30.30 claim on appeal, a constitutional speedy trial claim was deemed exhausted but procedurally barred); Walker v. Bennett, 262 F. Supp. 2d 25, 30-31 (W.D.N.Y. 2003) (same).

Third, even if petitioner could overcome the procedural bar, petitioner would not be entitled to habeas corpus relief on a constitutional speedy trial claim. To determine whether a denial of speedy trial relief amounts to a violation of the Sixth Amendment, the Court assesses the following four factors: 1) length of the delay, 2) reason for the delay, 3) the defendant's assertion of his right, and 4) prejudice to the defendant. United States v. Abad, 514 F.3d 271, 274 (2d Cir. 2008) (citing Barker v. Wingo, 407 U.S. 514, 530 (1972)). These "are related factors and must be considered together with such other circumstances as may be relevant." United States v. Williams, 372 F.3d 96, 113 (2d Cir. 2004).

The length of the delay itself, 179 days, does not amount to a "presumptively prejudicial delay." Doggett v. United States, 505 U.S. 647, 652 & n.1 (1992) (generally only delays of more than one year warrant further Barker inquiry).[7] Federal courts have repeatedly found that longer delays do not violate the Sixth Amendment. See e.g. United States v. Jones, 91 F.3d 5, 9 (2d Cir. 1996) (denying speedy trial relief for a delay of 25 months); United States v. Forrester, 60 F.3d

---

[6] Petitioner only cited N.Y.C.P.L. § 30.20 in his motion to dismiss the indictment. See Ex. D at 29.

[7] This analysis would not change even if the Court used the 290-day delay calculated by petitioner in his appellate brief. Ex. D at 29.

8

52, 59 (2d Cir. 1995) (denying speedy trial relief for a delay of 47 months). Moreover, the reason for the delay, even though it was articulated after the fact, was one of the permissible grounds for delay under New York law. See N.Y. Crim. Proc. Law § 30.30(4)(g)(i) (delays occasioned by the "unavailability of evidence" diligently sought by the district attorney and reasonably believed to be available within a reasonable time period "must be excluded"). Finally, the instant habeas petition fails to demonstrate or even allege that petitioner was prejudiced from the delay. See generally Williams, 372 F.3d at 113 (allegation that "witnesses have disappeared, recollections are dim, and the investigation is impaired" are insufficient to demonstrate prejudice); Abad, 514 F.3d at 275 ("the opportunity for the prosecution to prepare for trial does not on its own amount to prejudice to the defense;" rather, "prejudice is concerned with impediments to the ability of the defense to make its own case"). Therefore, petitioner's speedy trial claim, even if liberally construed to raise a federal constitutional claim, should be denied as it is both procedurally barred and without merit.

    B.    Ineffective Assistance of Counsel

Petitioner argues that his trial counsel was constitutionally ineffective for failing to file "reply papers pointing out that the court was not permitted to credit the People's justification on the ground that it was provided only belatedly." Pet. ¶ 12. Petitioner raised this argument on appeal and in his leave application to the New York Court of Appeals. The Appellate Division addressed the claim on the merits, holding, "defendant was provided with meaningful representation." Robinson, 47 A.D.3d at 848, 850 N.Y.S.2d at 535.

The state court's decision was not "contrary to" and did not involve "an unreasonable application of clearly established Federal law." 28 U.S.C. § 2254(d)(1). To establish a Sixth Amendment ineffective assistance of counsel claim, petitioner must demonstrate that: (1)

counsel's representation fell below an objective standard of reasonableness and was contrary to the Sixth Amendment guarantee of counsel; and, (2) there is a reasonable probability that, but for counsel's errors, the result of the trial would have been different. Strickland v. Washington, 466 U.S. 668, 688, 694 (1984). Reasonable probability is probability sufficient to undermine confidence in the outcome of the trial. Id. at 694.

In the context of an unsuccessful speedy trial motion, a defense lawyer's conduct does not rise to the level of ineffective assistance of counsel unless there is a reasonable probability that the motion would have been successful absent the alleged omissions. See Whaley v. Rodriguez, 840 F. 2d 1046, 1048 (2d Cir. 1988) (where the N.Y.C.P.L. § 30.30 motion "would have been denied, there could not be any prejudice from counsel's failure to make the motion, and the ineffective assistance claim necessarily fails"); Hernandez v. Phillips, No. 02-CV-9098, 2007 WL 2107472, at *22 (S.D.N.Y. July 20, 2007) (Sweet, J.) ("If a speedy trial motion in all likelihood would have been unsuccessful, trial counsel's failure to make the motion does not constitute ineffective representation."). Here, counsel's alleged omission was that he failed to file a reply brief that argued the trial court could not consider reasons for delay provided after the fact.

However, Judge Sullivan's ruling was based on two grounds: (1) if the court were to credit the People's explanation, delays occasioned by the necessity of obtaining the results of DNA testing constitute an exceptional circumstance and the time was excludable, and (2) given that the record was unclear, he would not count the time against the prosecution. The second basis for the ruling did not rely on the belated justification and was an independent basis to deny petitioner's N.Y.C.P.L. § 30.30 motion. Accordingly, even if petitioner's counsel had filed the reply brief, the N.Y.C.P.L. §30.30 motion still would have been denied; and therefore, petitioner

cannot establish that he suffered prejudice from this alleged error. Fayton v. Connolly, 06-CV-3685, 2009 WL 1615995, at *5 (S.D.N.Y. June 9, 2009) (Scheindlin, J.) (because petitioner's "section 30.30 motion was ultimately denied on the merits, [counsel's] failure to submit a timely reply" caused no prejudice). As such, petitioner's ineffective assistance of counsel claim should be denied.

### C. Prosecutorial Misconduct.

Petitioner also asserts that A.D.A. Gregory's statements in her summation deprived him of a fair trial. A.D.A. Gregory made the following statements: Austin was a "credible witness;" Austin "came in here and testified and she did so truthfully;" and, Austin "told the truth when she testified in this courtroom." The A.D.A. also said that the other witnesses at all times believed this was "a rape case," and warned the jury "not to be tricked" by petitioner's counsel. On direct appeal, the Second Department ruled this claim was unpreserved for appellate review, and that "in any event the challenged remarks did not deprive the defendant of a fair trial." Robinson, 47 A.D.3d at 848. In holding that the prosecutorial misconduct claim was unpreserved, the Second Department cited to New York case law holding that a general objection to a prosecutor's statement in summation is insufficient to preserve the issue on appeal. Id. (citing People v. Tonge, 93 N.Y.2d 838, 839-840 (1999); People v. Dien, 77 N.Y.2d 885 (1991)).

The State Court expressly relied on an independent state ground to deny petitioner's claim on direct appeal. Its alternative holding on the merits of the claim does not avoid the application of the procedural bar. Harris v. Reed, 489 U.S. 255, 264 n. 10 (1989). A ruling of this kind, establishing an independent and adequate state law ground for dismissing a claim on

appeal, "prevents federal habeas corpus review of the defaulted claim." Gray v. Netherland, 518 U.S. 152, 162 (1996).

A petitioner may overcome a procedural bar to a federal claim by (1) a showing of both good cause for the procedural default and prejudice therefrom, or (2) demonstrating that the failure to consider the federal claim will result in a fundamental miscarriage of justice, specifically the conviction of an actually innocent person. See Bousley v. United States, 523 U.S. 614, 622 (1998); Grey v. Hoke, 933 F.2d 117, 121 (2d Cir. 1991). Petitioner does not demonstrate cause and prejudice, nor does he demonstrate actual innocence. Therefore, this claim is procedurally barred.

Even if the Court reached the merits of petitioner's prosecutorial misconduct claim, it should be denied. In regards to prosecutorial misconduct claims, "[i]t is not enough that the [prosecutor's] remarks were undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168, 181 (1986) (internal quotation marks omitted). Instead, "the relevant question is whether the [prosecutor's] comments so infected the trial with unfairness as to make the resulting conviction a denial of due process." Id. (internal quotation marks omitted). To determine whether the prosecutor's comments rise to the level of a violation of petitioner's right to due process, the Court considers: (1) the severity of the misconduct; (2) the nature of the curative measures taken to remedy the prejudice, if any; and, (3) the certainty of the conviction absent the improper conduct. Tankleff v. Senkowski, 135 F.3d 235, 252 (2d Cir. 1998). The Court must examine each instance of alleged misconduct "in the context of the entire trial." Miranda v. Bennett, 322 F.3d 171, 180 (2d Cir. 2003) (quoting Donnelly v. DeChristoforo, 416 U.S. 637, 647-48 (1974)). Taking these factors into account, A.D.A. Gregory's comments in

summation did not infect the trial with unfairness or make the Court question the outcome of the trial.

1. Severity of Misconduct

   a. Austin's credibility

It is "well-established that the prosecution may not vouch for its witnesses' credibility," United States v. Newton, 369 F.3d 659, 681 (2d Cir. 2004), for two reasons. First, vouching "may prejudice defendant by suggesting to the jury that there is additional evidence, not introduced at trial but known to the prosecutor, that supports the witness's credibility." Id. Second, "prosecutorial vouching carries with it the imprimatur of the Government and may induce the jury to trust the Government's judgment rather than its own view of the evidence." Id.

Although A.D.A. Gregory's statements that Austin was a "credible witness," Austin "came in here and testified and she did so truthfully," and Austin "told the truth when she testified in this courtroom" raise a vouching concern, the Court must look at these comments in the context of the entire trial, including, the placement and number of improper statements in the "context of the entire argument." United States v. Zackson, 12 F.3d 1178, 1183 (2d Cir. 1993); Floyd v. Meachum, 907 F.2d 347, 353 (2d Cir. 1990) (emphasizing "repeated and escalating" improper conduct).

Here, when A.D.A. Gregory improperly stated that Ms. Austin, was "telling the truth," she did not offer her own personal belief as to the testimony. Instead, she immediately asked the jury to consider Austin's demeanor and the consistency and detail of her testimony. (Tr. 390-393). A.D.A. Gregory's references to Austin's credibility in this manner limited the vouching concern. See e.g., Santiago v. Rivera, No. 07-CV-785, 2007 WL 4377685, at * 6 (E.D.N.Y. Dec.

12, 2007) (Cogan, J.) (any vouching concern was eliminated by the fact that the questionable statement was made "in close proximity and tightly tied to references to specific facts that were part of the record before the jury," making it "clear that [the prosecutor] was arguing his view of the evidence"). Indeed, petitioner's counsel did not object to two of the three statements regarding Austin's veracity, which "strongly indicates that defense counsel at trial did not understand the statements to communicate impermissible vouching." Newton, 369 F.3d at 682 (statements that witnesses were credible and told the truth were not objected to and "were not so egregious to warrant reversal").[8]

Moreover, where defense counsel "call[s] into question the integrity and believability" of prosecution witnesses, the "prosecutor may rebut" with a fair response. Robinson v. Graham, 671 F. Supp. 2d 338, 362 (N.D.N.Y. 2009). See generally, United States v. Young, 470 U.S. 1, 12-13 (1985) (the court "must not only weigh the impact of the prosecutor's remarks, but must also take into account defense counsel's opening salvo."). In his summation, petitioner's counsel stated:

> This is a woman who makes her living selling herself. She was selling herself to you folks. .... [A] prostitute, a crack dealer, can also be a lying whore and that's what she is. She has lied numerous times not just here to you. She lied to Judge Ferdinand, who bent over backwards to try and help her, get her drug treatment.

(Tr. 382: 3-5; 16-20). Though the prosecutor's statements may have improperly vouched for the credibility of the witness, they were responsive to the defense counsel's extended attack on Austin's credibility. Defense counsel's vitriolic denigration of Austin as "a lying whore" led to the prosecutor's comments. In the context of "the trial as a whole," the prosecutor's comments were unlikely to have a prejudicial effect on the outcome. Darden, 477 U.S. at 182. See also

---

[8] Petitioner's counsel only objected to counsel's statement that "Deborah Austin is a credible witness. She was able to tell you what happened to her in detail," Tr. 392:12. The objection was overruled and petitioner's counsel did not request a specific curative instruction.

14

United States v. LaMorte, 950 F.2d 80, 83 (2d Cir. 1991) (improper statement made in "direct response to [defense counsel's] suggestion" that cooperating witnesses lied in exchange for reduced sentences was "*de minimis* in the context of this case" and did not deprive petitioner of a fair trial).

      b.   Comments on Other Witnesses' Beliefs and Defense Counsel's Summation

A.D.A. Gregory stated that the other witnesses thought this was "a rape case," and warned the jurors "not to be tricked" by petitioner's counsel. While "it is improper for a prosecutor to mischaracterize the evidence or refer in summation to facts not in evidence," "[s]uch an impropriety is not ground for reversal ... unless the remarks caused the defendant substantial prejudice." United States v. Rosa, 17 F.3d 1531, 1548-1549 (2d Cir. 1994). The beliefs of the witnesses other than Ms. Austin could not have influenced the ultimate verdict as they were not dispositive as to petitioner's guilt or innocence. Likewise, the prosecutor's comment "not to be tricked" was not so egregious as to warrant habeas relief. Martin v. Scully, 748 F. Supp. 159, 165, 167 (S.D.N.Y. 1990) (comments that defense counsel was trying to "bait" the jury or "cloud up [their] minds" were rhetorical comments responsive to defense counsel's characterization of the case as one based on speculation and innuendo); Palmer v. Senkowski, No. 99-CV-9634, 2002 WL 54608, at * 5 (S.D.N.Y. Jan. 15, 2002) (Koeltl, J.) (prosecutor's description of defense counsel's tactics as "subtle tricks" was "not so egregious to warrant habeas relief").

    2.   Curative Measures

After summation, the trial judge instructed the jury that they were free to accept or reject any portion of the lawyers' analysis, that it was up to them to decide the credibility of each witness, that they should not be influenced by sympathy or prejudice, and that they were to

decide the facts only from the evidence and not from speculation. (Tr. 405-7; 412-17). Where as here, the improper statements were not cumulative and repetitive, "the standard instructions given by the trial court were probably sufficient to cure any harm that the prosecutor's misstatements may have caused." Tankleff, 135 F.3d at 253.

3.   Certainty of Conviction

Moreover, while petitioner's conviction turned on whether the jury believed that the intercourse was consensual, the prosecution introduced overwhelming evidence to support that Ms. Austin was raped. Two "ear" witnesses walking by the lot heard a woman screaming and telling somebody "no." (Tr. 26:10-22; Tr. 27:2-24; Tr. 41-42). They called 911. Police officers who responded to the 911 call heard people struggling and cries for help emanating from the lot. (Tr. 56: 18-21; 83: 8-13). They found petitioner on top of Ms. Austin with his pants down. An emergency medical technician testified that Austin's bruises on her body were consistent with having been dragged into a lot. (Tr. 265: 19-23; 271: 12-18). Absent the prosecutor's improper comments, the jury had more than sufficient evidence to convict petitioner. See Tankleff, 135 F.3d at 253 (2d Cir. 1998) (petitioner was not denied a fair trial because Court could not "say that this is a case in which evidence was so closely balanced that the prosecutor's comments were likely to have had a substantial effect on the jury.")

For the reasons stated above, even if reached on the merits, petitioner's prosecutorial misconduct claim should be denied as the state court decision was not contrary to or an unreasonable application of clearly established Federal Law.

## CONCLUSION

For the reasons stated above, it is respectfully recommended that the instant petitioner seeking writ of habeas corpus under 28 U.S.C. § 2254 should be denied. Because petitioner has not made a substantial showing of the denial of any constitutional right, it is recommended that

no certificate of appealability should be issued. 28 U.S.C. §2253; see Lozada v. U.S., 107 F.3d 1011, 1017 (2d Cir. 1997), abrogated on other grounds, U.S. v. Perez, 129 F.3d 255, 259-60 (2d Cir. 1997) (discussing the standard for issuing a certificate for appealability); see also Lucidore v. N.Y. State Div. Of Parole, 209 F.3d 107, 112-13 (2d Cir. 2000), cert. denied, 531 U.S. 873 (2000). It is further recommended that for purposes of an appeal *in forma pauperis*, the Court should certify pursuant to 28 U.S.C. §1915(a) that any appeal from a judgment denying this petition would not be taken in good faith. Coppedge v. U.S., 369 U.S. 438 (1962).

### FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Any objections to this Report and Recommendation must be filed with the Clerk of Court, with a copy to the undersigned, within fourteen (14) days of receipt of this Report. See 28 U.S.C. § 636 (b)(1); Fed. R. Civ. P. 6(a), 6(e), 72. Any request for an extension of time to file objections must be made to the assigned District Judge within the fourteen (14) day period. Failure to file a timely objection to this Report generally waives any further judicial review. DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000); Spence v. Superintendent, Great Meadow Corr. Fac., 219 F.3d 162, 174 (2d Cir. 2000); see Thomas v. Arn, 474 U.S. 140, 155 (1985). SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: January 4, 2011
Brooklyn, New York